**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-2419**

———————

ELAYNE WOLF,

     Plaintiff - Appellant,

  v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, a/k/a Fannie Mae; BAC
HOME LOANS SERVICING, LP; PROFESSIONAL FORECLOSURE
CORPORATION OF VIRGINIA,

     Defendants - Appellees.

-------------------------------------------

CONSUMER FINANCIAL PROTECTION BUREAU,

     Amicus Supporting Appellant,

AMERICAN BANKERS ASSOCIATION; CONSUMER BANKERS ASSOCIATION;
CONSUMER MORTGAGE COALITION,

     Amici Supporting Appellees.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Charlottesville.  Norman K. Moon,
Senior District Judge.  (3:11-cv-00025-NKM-BWC)

———————

Argued: December 5, 2012   Decided: February 28, 2013

———————

Before TRAXLER, Chief Judge, and FLOYD and THACKER, Circuit
Judges.

———————

Affirmed by unpublished per curiam opinion.

**ARGUED:** Peter G. Wilson, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Amicus Supporting Appellant. Henry Woods McLaughlin, III, LAW OFFICE OF HENRY MCLAUGHLIN, P.C., Richmond, Virginia, for Appellant. John Donley Adams, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellees. **ON BRIEF:** Seth A. Schaeffer, Jeffrey D. McMahan, Jr., Matthew A. Fitzgerald, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellees Federal National Mortgage Association and BAC Home Loans Servicing, LP; Peter I. Grasis, Daniel M. Rathbun, RATHBUN & GOLDBERG, P.C., Fairfax, Virginia, for Appellee Professional Foreclosure Corporation of Virginia. Leonard J. Kennedy, General Counsel, To-Quyen Truong, Deputy General Counsel, David M. Gossett, Assistant General Counsel, Rachel Rodman, Senior Counsel, Kristin Bateman, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Amicus Supporting Appellant. Kirk D. Jensen, Michael R. Williams, Jeffrey P. Naimon, BUCKLEYSANDLER LLP, Washington, D.C., for Amici Supporting Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Elayne Wolf appeals the district court's dismissal of her amended complaint with prejudice. Wolf brought suit against Federal National Mortgage Association (Fannie Mae), BAC Home Loans Servicing, L.P. (BAC), and Professional Foreclosure Corporation of Virginia (PFC), seeking rescission of her home mortgage loan under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667. In addition to her TILA claims, Wolf asserts that the foreclosure and sale of her house was also invalid because of deficiencies in the transfer of the deed of trust and the appointment of a substitute trustee. Wolf additionally makes claims of fraud, defamation, and breach of the implied covenant of good faith and fair dealing. The district court dismissed Wolf's case in its entirety, and Wolf timely appealed. For the reasons that follow, we affirm.

I.

We review a district court's grant of a motion to dismiss de novo and view the facts in the light most favorable to the non-moving party. Gilbert v. Residential Funding, LLC, 678 F.3d 271, 273 (4th Cir. 2012).

This action arises from Wolf's attempt to rescind her mortgage through TILA. Wolf's complaint alleges that she owned a home in Charlottesville, Virginia, and, on May 14, 2007,

3

refinanced her existing home mortgage with MetroCities Mortgage, LLC (MetroCities). The loan was evidenced by a note that was secured by a deed of trust, and by a lien on Wolf's home. The deed of trust named Mortgage Electronic Systems (MERS) as the lender's nominee, granting MERS legal title to the deed of trust and giving MERS legal rights, including the right to foreclose. The deed of trust named Michael J. Barrett as trustee. At the loan closing, Wolf received a disclosure statement and a "Notice of Right to Cancel" the loan as required by TILA. See 15 U.S.C. § 1635(a). Additionally, Wolf received a separate notice informing her of her ability to opt out of an arbitration agreement with MetroCities.

On March 12, 2010, Wolf defaulted on the terms of her loan. On March 30, 2010, MERS assigned the deed of trust to BAC. On this same day, BAC appointed PFC as substitute trustee in place of the original trustee-Barrett. BAC instructed PFC to foreclose. In response, PFC advertised a foreclosure sale for May 5, 2010. On May 2, 2010, just three days before the foreclosure sale, Wolf attempted to rescind her mortgage loan pursuant to TILA by mailing a notice of rescission to BAC. As a result, BAC temporarily cancelled the foreclosure sale. However, the foreclosure sale eventually took place in July 2010, and Fannie Mae purchased the home.

4

Thereafter, Fannie Mae instituted an unlawful detainer action against Wolf in the General District Court of Albemarle County. After the Albemarle County court awarded possession of the property to Fannie Mae, Wolf filed her initial complaint in this action in the same court. PFC successfully removed this action to the United States District Court for the Western District of Virginia.

Wolf submits that she is entitled to have her home loan rescinded pursuant to TILA. In furtherance of this argument, Wolf alleges that the original lender, MetroCities, materially underdisclosed the finance charge that was applied as part of obtaining her loan. Specifically, Wolf claims that MetroCities materially underdisclosed the finance charge based on its failure to disclose the following: (1) a $10 charge for recordation costs, (2) an interest charge of $15, and (3) an excess charge for casualty insurance that was at least $50 more than reasonable. Next, Wolf alleges that her right to rescind the loan was not properly disclosed to her. In addition to her TILA claims, Wolf asserts that the foreclosure sale of her house is void because the assignment of the note from MERS to BAC was invalid as was the appointment of PFC as substitute trustee. Wolf also makes claims for fraud against BAC and PFC, defamation against PFC, and breach of the implied covenant of good faith and fair dealing against BAC. In support of her fraud claim,

5

Wolf argues that appointment of PFC as substitute trustee was an act of fraud, and that the advertisement of the foreclosure sale itself was a fraudulent representation. She further argues that the advertisement of the foreclosure sale defamed her and caused her considerable public shame and embarrassment. Wolf's claim for breach of the implied covenant of good faith and fair dealing also centers on her allegation that the appointment of PFC and the subsequent foreclosure sale were deficient.

The district court found that Wolf's TILA claims were untimely and that the rest of her allegations failed to state a cognizable claim. The district court then granted BAC, PFC, and Fannie Mae's motion to dismiss the case in its entirety. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

Wolf first argues that the district court erred in dismissing her TILA claims based on her failure to timely exercise her right to rescind the home mortgage loan. In enacting TILA, Congress decided "that economic stabilization would be enhanced . . . by the informed use of credit." 15 U.S.C. § 1601(a). In furtherance of informed use of credit, TILA requires that a creditor make certain disclosures of terms

6

when a loan transaction is made. When a consumer enters into a loan secured by her principal residence, TILA's "buyer's remorse" provision allows the consumer to rescind the agreement. Id. § 1635(a). Ordinarily, the right of rescission may be exercised within three business days from either closing, delivery of notice of the right to rescind, or delivery of all "material disclosures," whichever occurs last. Id. If the required notice or material disclosures are not provided or are deficient, the deadline to rescind is extended to three years after consummation, transfer, or sale of the property, whichever event occurs first. Id. § 1635(f).

TILA also requires that lenders disclose to borrowers "finance charges," which are the cost of borrowing and include "the sum of all charges . . . imposed directly or indirectly by the creditor as an incident to the extension of credit." Id. §§ 1605(a), 1632(a). If a lender fails to accurately disclose finance charges to the borrower and a foreclosure is underway, any charge that varies more than $35 from the actual sum of the finance charge is grounds for rescission. Id. § 1635(i)(2). In addition to the required disclosure of finance charges, TILA also mandates that the lender accurately disclose the consumer's right to rescind the loan. Id. § 1635(a). The lender must give notice that "clearly and conspicuously discloses" the borrower's right to rescind. Id.

7

As noted previously, the loan between Wolf and Metrocities was finalized on May 14, 2007, but Wolf did not file a notice of rescission until May 2, 2010. Thus, in order for her rescission to be timely, she must establish that the three-year extended deadline applies. Wolf contends that the three-year deadline applies because: (1) MetroCities assessed three underdisclosed finance charges, and (2) MetroCities did not adequately disclose her rescission rights in that the inclusion of an arbitration clause rendered the notice of the right to rescind "insufficiently clear to comply with the elements of TILA."

The district court found it unnecessary to decide whether the three-year deadline applied because it determined that even if it did apply, Wolf did not validly exercise her right of rescission because she failed to file a lawsuit within the three-year deadline. The district court issued its decision on November 23, 2011. On May 3, 2012, this Court issued its opinion in Gilbert v. Residential Funding LLC, 678 F.3d 271 (4th Cir. 2012). This Court held that a borrower does not need to file a lawsuit seeking rescission within the three-year time frame and instead, must only notify her lender that she is exercising her right of rescission within the three-year limit. Id. at 277. Therefore, the district court's holding that Wolf's rescission claim had expired is now contrary to the law of this circuit. In light of Gilbert, Wolf's claim had not necessarily

8

expired when Wolf filed suit, and the relevant question becomes whether Wolf has adequately alleged facts such that the three-year deadline applies.

## B.

Despite the fact the district court failed to evaluate the substance of Wolf's TILA claims, we are "entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below." Crosby v. City of Gastonia, 635 F.3d 634, 643 n.10 (4th Cir. 2011) (quoting Catawba Indian Tribe v. City of Rock Hill, 501 F.3d 368, 372 n.4 (4th Cir. 2011)) (internal quotation marks omitted). Here, even with the benefit of Gilbert, Wolf's TILA claims fail.

As previously noted, when a foreclosure is underway, any failure to accurately disclose a finance charge exceeding $35 is grounds for rescission. 15 U.S.C. § 1635(i)(2). Wolf asserts that MetroCities failed to disclose three finance charges: (1) an excess charge for casualty insurance that was at least $50 more than reasonable, (2) a $10 recordation fee, and (3) a $15 interest charge which arose because the bank received an overpayment from Wolf and failed to return it for two months. Because the recordation fee and the interest charge together fail to meet the threshold amount, we begin with the alleged excess casualty charge.

9

Wolf alleges that she was charged $591 for one year of casualty insurance and that escrow reserved an additional $443.25 for nine months of additional insurance. Although casualty insurance charges are part of the applicable finance charge, id. § 1605(c), escrow payments are not, id. § 1605(e)(3). Further, if the borrower is given the option to pick his or her own casualty insurer and this right is disclosed at closing, then casualty insurance is not a part of the finance charge. Id. § 1605(c). The applicability of the escrow exemption is conditioned upon the payments being bona fide and reasonable. Regulation Z, 12 C.F.R. § 1026.4(c)(7) (previously codified at 12 C.F.R. § 226.4(c)(7)).

Wolf does not contend that the $591 for casualty insurance is unreasonable. Instead, it appears that Wolf takes issue with the escrow fees, as Wolf avers that the amount charged for casualty insurance was unreasonable because it required payment in advance for an excessive amount of time. Wolf summarily claims that the amount charged "was unreasonable by at least $50." Wolf, however, presents no facts as to why the amount of escrow charged was unreasonable. Wolf's bare assertion that the fees charged were unreasonable "stops short of the line between possibility and plausibility" of the right to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 546 (2007). Because of

10

this, her claim that the escrow payments were unreasonable fails.

Second, as already noted, the $10 recordation fee and the $15 interest fee do not meet the threshold $35 requirement combined. 12 C.F.R. § 1026.23(h)(2) (stating that once foreclosure is initiated finance charges are deemed accurate if they were "understated by no more than $35.") Therefore, Wolf's claim based on the recordation and interest fees fails as a matter of law.

## C.

In support of her TILA claim, Wolf also alleges that the lender failed to accurately disclose her right to rescind the loan. In addition to the disclosure of finance charges, TILA also mandates that the lender "clearly and conspicuously" disclose the borrower's right to rescind the loan. 15 U.S.C. § 1635(a). Wolf concedes that the Notice of the Right to Cancel was in proper form. As a condition of the loan, MetroCities required Wolf to enter an arbitration agreement. After the loan was closed, Wolf was informed of her right to rescind the arbitration agreement as well as her right to rescind the loan itself. Wolf alleges that the information provided in the arbitration agreement was "drastically inconsistent" with the information provided for rescinding the loan and that this

11

inconsistency undermined the otherwise accurate rescission information provided to her. Specifically, Wolf claims that the arbitration agreement required her to send different information to a different address than what was required to rescind the loan. According to Wolf, this rendered the Notice of the Right to Cancel "insufficiently clear to comply with the requirements of TILA."

We are reluctant to accept that an extrinsic document makes a separate Notice of the Right to Cancel unclear, especially when Wolf concedes that the notice complied with the requirements of TILA. The separate arbitration provision simply gave Wolf a choice to terminate the arbitration provision without affecting the underlying loan. Wolf's choice to arbitrate was wholly separate from her choice to rescind the loan in its entirety, and her right to rescind the loan was in no way undermined by her right to opt out of arbitration. The fact that the arbitration cancellation provisions were different from the rescission provisions does not affect the clarity of the separate Notice of the Right to Cancel. Accordingly, we reject Wolf's argument that the arbitration cancellation provision undermined a Notice of the Right to Cancel that was perfectly consistent with TILA's disclosure requirements.

In sum, Wolf has failed to state any viable claim under TILA, and we therefore affirm the district court's dismissal of her TILA claims.

## III.

Wolf next challenges the validity of the assignment of the note from MERS to BAC. First, Wolf asserts that the deed of trust did not provide MERS the right to assign the note. Second, Wolf alleges that neither MERS nor BAC possessed the note when it was purportedly assigned because the note was lost at that time. The district court found that Wolf lacked standing to challenge the propriety of the assignment. We agree.

In addition to the constitutional requirements for standing, there exist other "prudential limitations" to standing. Warth v. Seldin, 422 U.S. 490, 498 (1975). Among these limitations, is the principle that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. at 499.

BAC argues that as a non-party to the assignment, Wolf does not have the right to challenge the assignment. BAC's argument is in accord with Virginia law. In Virginia, to sue on a contract one must be a party to or beneficiary of the contract.

13

See <u>Mich. Mut. Ins. Co. v. Smoot</u>, 129 F. Supp. 2d 912, 920 (E.D. Va. 2000). Notably, Wolf has not alleged that she is a party to the assignment from MERS to BAC or that she is an intended beneficiary of the assignment. Without an enforceable contract right, Wolf lacks standing to attack the validity of the assignment. Furthermore, the assignment does not affect Wolf's rights or duties at all. Wolf still has the obligation under the note to make payments. In fact, the only thing the assignment affects is to whom Wolf makes the payments. Thus, she has no interest in the assignment from MERS to BAC. Accordingly, she has no standing to challenge it.

IV.

Wolf next argues that BAC's appointment of PFC as trustee was invalid, and because of this PFC was without authority to foreclose on her property. Wolf makes two arguments in support of this contention. First, she claims that BAC and MERS were not in possession of the note at the time they purported to appoint PFC as trustee. Second, Wolf avers that the notarized document effectuating PFC's appointment as trustee was a "bogus" document because the second page was not attached to the first page when the document was signed.

Wolf contends that the appointment of PFC as trustee was ineffective because on March 12, 2010, eighteen days before the

14

appointment, she received a letter from BAC's counsel informing her that the note "was unavailable at this time." Wolf claims that the appointment of PFC as trustee was a nullity because BAC nor MERS possessed the note at the time of the appointment. Even if the appointment might be a nullity in that circumstance, Wolf does not present a sufficient claim that BAC or MERS did not possess the note. In fact, there is substantial evidence to the contrary. PFC attached a copy of the note as an exhibit to the district court, and the note states that PFC is the holder of the note or the authorized agent of the holder of the note. The note was also produced at a hearing in the district court. Further, an examination of the note reveals the endorsement of the original lender, MetroCities to Countrywide Bank, then from Countrywide Bank to Countrywide Home Loans—which became BAC—and then an endorsement in blank by Countrywide Home Loans. According to Virginia law, "[w]hen endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." Va. Code Ann. § 8.3A-205(b). And once in possession of an instrument, the holder is entitled to enforce it. Id. § 8.3A-301. Thus, PFC as a holder in possession of the note had the authority to foreclose on the property in accordance with Virginia law.

Wolf's next argument is that the notarized document purporting to appoint PFC as trustee is invalid because the signed second page of the document was not attached to the first page at execution. Wolf alleges that as a result of this defect the document was ineffective because of invalid notarization. In support of this proposition, Wolf relies on Stanley Dale Williams v. HSBC Finance Corp., No. CL 10-877 (Va. Cir. Ct. March 30, 2011). In Williams, the plaintiff alleged that the two pages of a document purporting to appoint a substitute trustee appeared to have been executed at different places and times, and because of this may not have been executed in front of a notary. The court found that this was a valid claim because the document must be executed in front of a notary to be effective. Id. at 2. Unfortunately, Williams is not helpful to Wolf. In Williams, if the claims were true, this would have established that the document was not properly notarized. Here, even if the allegations are true, it is irrelevant whether the pages were stapled together when the documents were signed. Wolf cites no authority, and we have found none, that requires papers to be stapled together for a proper notarization. Therefore, Wolf's argument fails.

V.

Wolf next asserts a claim for fraud. Wolf alleges that because of the invalid appointment of PFC as the trustee, the foreclosure action was void, and BAC and PFC committed fraud by advertising the foreclosure sale. Further, Wolf claims that due to her reliance on the validity of the appointment, she failed to take action to prevent the foreclosure prior to the sale. To plead a claim for fraud, a plaintiff must show: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. State Farm Mut. Auto. Ins. Co. v. Remley, 618 S.E.2d 316, 321 (Va. 2005). Additionally, the Federal Rules of Civil Procedure mandate a heightened pleading standard for fraud claims. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 786 (4th Cir. 1999)).

17

Wolf fails to satisfy the pleading standards for fraud. First, Wolf does not allege a false representation of material fact that is contained in the appointment document. Further, Wolf does not identify any representation that misled her. Even if we were to accept that the appointment of PFC and the subsequent foreclosure sale were deficient, the document does not contain any facts that mislead Wolf. The document simply captures the intent of BAC and PFC to substitute PFC as trustee. Moreover, Wolf did not rely on these statements, as she took action to stop the foreclosure sale when she mailed notice of rescission.

Similarly, Wolf fails to plead sufficient facts to show that the advertisement of the foreclosure sale was a false representation. Nothing in the foreclosure claim was a misrepresentation of material fact. The advertisement merely shows that PFC intended to foreclose on the property, an action on which it followed through. Also, there is no reason to conclude that BAC and PFC intended to defraud Wolf because they sought to foreclose on her property after she defaulted on the loan. It should come as no surprise to a home-owner that the lender may seek to foreclose on her home when she fails to make payments. In sum, Wolf fails to plead several required elements to make a claim for fraud, and the district court was correct in dismissing her claim.

VI.

Next, Wolf contends that PFC defamed her when it published the foreclosure notice. She claims that the foreclosure notice caused "her public shame and embarrassment and considerable emotional harm." To state a claim for defamation Wolf must show: (1) publication of (2) a false statement (3) that defamed Wolf, and (4) was made with the requisite intent. See Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993) (applying Virginia law). "To be 'actionable,' the statement must be not only false, but also defamatory, that is, it must 'tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Id. (quoting Restatement (Second) of Torts § 559).

In support of her argument Wolf cites language from the notice of foreclosure. The notice provides:

> In execution of a Deed of Trust . . . . from ELAYNE WOLF dated May 14, 2007 . . . the undersigned appointed Substitute Trustee will offer for sale at a public auction at the front of the Circuit Court building for the County of Albemarle located at 501 E. Jefferson Street, Charlottesville, Virginia, on July 21, 2010 . . . .

Although Wolf contests the validity of the foreclosure sale, she has not alleged that the published statements were false. In fact, the advertisement that a foreclosure sale would occur is unquestionably true. See Lapkoff v. Wilks, 969 F.2d 78, 82 (4th

19

Cir. 1992) (noting that a true statement cannot be defamatory). Furthermore, Wolf was undeniably in default, rendering the publication of a foreclosure notice warranted. In the absence of any false statement about Wolf, we cannot conclude that the foreclosure notice defamed her. Because of this, Wolf's defamation claim fails.

## VII.

Finally, Wolf argues that the note and accompanying deed of trust contained an implied covenant of good faith and fair dealing that imposed obligations on the holder of the note. Wolf claims that BAC breached the implied covenant of good faith and fair dealing by acting outside of the scope of their rights when (1) proceeding with the foreclosure even after the allegedly "bogus" substitution of the trustee and (2) asserting ownership on the basis of an invalid foreclosure.

Wolf is correct that "[i]n Virginia, every contract contains an implied covenant of good faith and fair dealing." Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). However, the covenant of good faith and fair dealing does not mean that a party who has contracted for valid contractual rights cannot exercise those rights, as long as that party does not exercise those rights in bad faith. See id.

20

In this case, MERS had the authority to assign the note to BAC, and BAC had the authority to appoint a substitute trustee, namely PFC. The note also provided the right to foreclose on the property. Simply stated, MERS and its assigns had valid contractual rights to take all of the steps that they did in fact take. To prevail, Wolf needs to show sufficient evidence that these rights were exercised in bad faith. Although Wolf may not agree with actions taken, she has presented no evidence that BAC's contractual discretion was exercised in bad faith, dishonestly, or that she was treated unfairly. Therefore, we must conclude that BAC did not breach the implied covenant of good faith and fair dealing.

## VIII.

Wolf fails to state any claim that survives a motion to dismiss. Because of this failure, we affirm the judgment of the district court.

AFFIRMED

21